UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

STEVEN PAYTON, et al                                  CIVIL ACTION

VERSUS                                                18-2365

SOUTHERN FIDELITY                                     SECTION: "J" (3)
INSURANCE COMPANY

## ORDER & REASONS

Before the Court is a *Motion for Partial Summary Judgment* **(Rec. Doc. 41)** filed by Plaintiffs, Dionne and Steven Payton ("Plaintiffs"), and an opposition thereto (Rec. Doc. 48) filed by Defendant, Southern Fidelity Insurance Company ("Southern").[1] Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that Plaintiffs' motion should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

This case arises out of an August 20, 2017 fire that destroyed Plaintiffs' home located at 3501 Red Oak Court, New Orleans, Louisiana ("the Home"). The cause of the fire was determined to be arson. (Rec. Doc. 48-12 at 19). Plaintiffs filed the instant lawsuit to recover insurance proceeds they believe are owed to them under the terms of their fire insurance policy with Southern ("the Policy"). Southern has refused to pay Plaintiffs, asserting, amongst other things, that Plaintiffs concealed material

---

[1] As Plaintiffs are a married couple and aligned on every issue in this case, this Order will occasionally refer to "Plaintiffs" in the plural, even though the actual actions described may have only been undertaken by one member of the couple.

information from Southern and made fraudulent misrepresentations when applying for the Policy.

Specifically, when applying for the Policy in June of 2017, Plaintiffs were asked if they had "ever incurred a fire or a liability loss, or in the past 36 months, incurred more than two losses of any type?" (Rec. Doc. 48-8 at 4). Plaintiffs answered in the negative. Additionally, Plaintiffs were asked if they "had a foreclosure, repossession, or bankruptcy during the last 5 years?" *Id.* at 3. Plaintiffs answered in the affirmative but stated the only lien, a bankruptcy, had been discharged a year prior. As it turns out, Plaintiffs incurred a fire loss in 2009 on a previous residential property, and the Home was subject to foreclosure proceedings in 2012. (Rec. Docs. 48-9 and 48-10).

If Plaintiffs' statements constitute intentional concealment or misrepresentation, as Southern claims, then the "concealment and fraud exclusion" ("the Exclusion") contained in the Policy would be triggered, thereby absolving Southern of any obligation to reimburse Plaintiffs for the loss of the Home.

On November 16, 2018, the Court stayed this case to allow the Louisiana Office of the State Fire Marshal to complete its investigation into the fire. (Rec. Doc. 29). On March 2, 2020, the case was reopened after the Court was notified the Fire Marshall's office had closed its investigation for the time being. (Rec. Doc. 33). On March 13, 2020, Plaintiffs filed the instant Motion for Partial Summary Judgment asking the Court to find that the Exclusion does not apply in this case.

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (internal citations omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

## **DISCUSSION**

Southern's invocation of the Exclusion is an affirmative defense, and therefore Southern must prove at trial that Plaintiffs intentionally concealed or misrepresented facts when they applied for the Policy. Accordingly, Plaintiffs have met their initial burden by alleging that there is insufficient evidence in the record with respect to their alleged fraud. Thus, the ultimate question presented by Plaintiffs' motion is if Southern can show there exists a genuine issue of material fact as to whether Plaintiffs intentionally misrepresented or concealed material facts when applying for the Policy.

Although the Exclusion is technically part of the insurance contract between Plaintiffs and Southern, fraud and concealment exclusions in fire insurance contracts are heavily regulated by both Louisiana statute and caselaw. *See* La. R.S. § 22:1311(F) and La. R.S. 22:860; *Charleston v. State Farm Fire & Casualty Co.*, Civ. A. No. 88-0103, 1989 WL 30244 at *1 (E.D. La. Mar. 30, 1989). It is well-settled law,

and both parties agree, that in order for Southern to avail itself of the Exclusion and bar Plaintiffs' recovery, it must prove "(1) the insured made a false statement in his application for the insurance policy, (2) the false statement was made with the intent to deceive, and (3) the false statement materially affected the acceptance of the risk by the insurer or the hazard assumed." *Gwin v. Liberty Mut. Ins. Co.*, No. 16-1222, 2017 WL 3574443, at *5 (W.D. La. Aug. 17, 2017); *see also Jamshidi v. Shelter Mut. Ins. Co.,* 471 So. 2d 1141, 1143 (La. App. 3rd Cir. 1985). Plaintiffs do not dispute the presence of the third element. Therefore, the Court will focus its inquiry on whether there is a genuine issue of material fact as to whether Plaintiffs made a false statement, and if so, whether that false statement was made with intent to deceive.

## I. Whether Plaintiffs Made a False Statement on the Policy Application

As discussed in the recitation of facts, it is undisputed that Plaintiffs' application for the Policy contained false answers to two prequalification questions, thereby concealing from Southern Plaintiffs' 2009 fire loss and 2012 foreclosure proceedings. Nevertheless, Plaintiffs argue that the false answers in the Policy application cannot be imputed to them because the answers were the result of mistakes made by Tim Biedenkopf, the insurance salesman who sold Plaintiffs the policy. Under Louisiana law, if an agent of the insurer "by mistake, fraud, or negligence inserts erroneous or untrue answers to the questions contained in the application, those representations are not binding on the insured." *State Farm Mut. Auto. Ins. Co. v. Bridges*, 45,162 (La. App. 2 Cir. 5/19/10).

Biedenkopf asked Plaintiffs the prequalification questions verbally via telephone and then typed in their responses. (Rec. Doc. 41-15). He did not, however, ask them verbatim. As is relevant here, instead of asking "[h]as the applicant ever incurred a fire or liability loss or in the past 36 months incurred more than two losses of any type," Biednkopf asked, "[h]ave you had any past claim history?" *Id.* After inputting Plaintiffs' responses, he sent them the document to be signed electronically.

Plaintiffs contend that Biedenkopf's failure to "read the insurance application questions verbatim" constitutes mistake or negligence sufficient to defeat Southern's use of the Exclusion. (Rec. Doc. 41-1 at 11). Plaintiffs argument fails for two reasons.

First, there is a genuine issue of material fact as to whether Biedenkopf is an agent for Southern or, in the alternative, an "insurance broker" not tied to any particular company. "Insurance agents are persons employed by the insurance company" whereas "[i]nsurance brokers solicit insurance from the public under no employment from any special company, placing the insurance with any company selected by the insured, or, failing such selection, by the broker himself." *Raymond v. Zeringue,* 422 So.2d 534, 536 (La. App. 1982). An insurer is not responsible for the negligent acts of an independent broker in the same way it is for the actions of its legal agent. *See Manzella v. Paul Revere Life Ins. Co.*, 872 F. 2d 96, 98 (5th. Cir. 1989).

Here, the record shows Biedenkopf does not work for Southern. Rather, he operates an independent agency, Biedenkopf Insurance, which has a loose affiliation with a larger entity called The Woodlands Financial Group. (Rec. Doc. 48-18). Indeed, Biedenkopf stated that Southern only accounts for around ten percent of his overall

business. *Id.* Moreover, Steven Payton refers to Biedenkopf as *his* insurance agent, having used him in 2014 to purchase an insurance policy from a different insurance company than Southern, and further states his belief that Biedenkopf was working for The Woodlands Financial Group at the time Plaintiffs purchased the Policy from him. (Rec. Doc. 48-3). At a minimum, this serves as a genuine issue of material fact as to whether Biedenkopf was Southern's legal agent when he sold the Policy to Plaintiffs.

Second, there is a genuine issue of material fact as to whether Biedenkopf's actions constituted mistake or negligence. Although Biedenkopf initially asked Plaintiffs the prequalification questions over the phone, Plaintiffs were sent the finalized written copy of the application to peruse and sign. "[A] a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him." *Sacks v. Allstate Prop. & Cas. Ins. Co.*, No. 16-16578, 2018 WL 1409269, at *3 (E.D. La. Mar. 21, 2018). Plaintiffs' signature notwithstanding, Biedenkopf's questions, while not verbatim, effectively conveyed the gist of the prequalification questions. Plaintiffs offer no satisfying explanation as to how the question, "have you had any past claims history," prompted a negative response in light of their 2009 fire loss claim.[2]

---

[2] In their filings, the parties briefly make similar arguments and counterarguments regarding Plaintiffs' failure to disclose foreclosure proceedings, i.e. Biedenkopf did not ask the question verbatim so the false statement by Plaintiffs cannot be imputed to them. As the analysis is the exact same as the failure to disclose the 2009 fire loss, the Court sees no need to discuss that in detail.

As such, the Court finds that Southern has established the existence of genuine issues of material fact regarding whether Plaintiffs made a false statement imputable to them on the Policy application.

## II. Whether the False Statement Was Made with the Intent to Deceive

Plaintiffs claim there is no evidence in the record of an intent to deceive. In disputes such as this, the insurer is not required to provide strict proof of fraud "because of the inherent difficulties in proving intent." *Benton v. Shelter Mut. Ins. Co.*, 550 So. 2d 832, 835 (La. Ct. App. 2d Cir. 1989). Rather, intent to deceive must be determined from the "surrounding circumstances indicating the insured's knowledge of the falsity of the representation made in the application and his recognition of the materiality of the misrepresentations, or from circumstances which create a reasonable assumption that the insured recognized the materiality." *Cousin v. Page*, 372 So. 2d 1231, 1233 (La. 1979).

Typically, factual questions involving a person's state of mind are inappropriate for summary judgment. *Int'l Shortstop, Inc.*, 939 F.2d at, 1266 ("When state of mind is an essential element of the nonmoving party's claim, it is less fashionable to grant summary judgment because a party's state of mind is inherently a question of fact which turns on credibility."). *A fortiori*, summary judgment is particularly inappropriate when there is at least some evidence in the record of an intent to deceive. In the case at bar, Plaintiffs' experience applying for insurance combined with the destruction of their previous home by fire certainly gives a fact-

finder enough circumstantial evidence to infer that Plaintiffs intentionally failed to disclose the 2009 fire loss.

Indeed, some courts relying on similar facts have gone as far as to render judgment in favor of the insurer. *See Davis v. State Farm Mut. Auto. Ins. Co.,* 415 So. 2d 501, 503 (La. Ct. App. 1st Cir. 1982) (stating, in overturning a trial court's judgment in favor of the insured, "[b]ecause of the fact that [the insured] had had automobile insurance previously, he either knew or should have known of the importance of a driving record when seeking automobile insurance."); *Watson v. United of Omaha Life Ins. Co.,* 735 F. Supp. 684, 685 (M.D. La. 1990) (granting summary judgment in favor of insurer in part because "Watson was 49 years old when she applied for this life insurance. The record reveals that she had at least some basic and practical experience with life insurance to so understand the significance of each of her responses."). The courts also considered the presence of the insured's signature to be a sign of an intent to deceive. *See Davis,* 415 So. 2d at 503; *Watson*, 735 F. Supp. at 685. As previously mentioned, Plaintiffs signed the Policy application here as well.

Plaintiffs counter by pointing to Plaintiffs' testimony in the post-fire insurance investigation conducted by Southern in December of 2017. (Rec. Doc. 41-11). During this investigation, Plaintiffs' claim they were "candid and forthright" in their testimony, and thus this proves they were candid and forthright when they applied for the Policy in June of 2017. The Court finds a myriad of issues with Plaintiffs' position.

9

First, Plaintiffs fail to sufficiently articulate how Plaintiffs' behavior during the investigation, subsequent to the fire, bears in any appreciable way on the question of whether they intentionally made false statements six months earlier when applying for the Policy. Secondly, to the extent said behavior does make it less likely Plaintiffs intentionally lied on their Policy application, it is simply a factor for the jury to consider. It does not render the issue appropriate for summary judgment in light of the countervailing evidence. Finally, Southern has provided evidence that Plaintiffs were, in fact, not candid during the insurance investigation. On the contrary, Plaintiffs continued to conceal material information by claiming the 2009 house fire started on a neighbor's property and was handled through the neighbor's insurance. (Rec. Doc. 48-3 at 37). The record, however, reflects that the fire originated on Plaintiffs' property and the claim was paid out via State Farm, Plaintiffs' insurer at the time. (Rec. Doc. 48-9). Additional evidence suggests Plaintiffs remained less than forthcoming about various liens on the Home that they failed to disclose on the initial application. (Rec. Docs. 48-3 at 35, Rec. Doc. 48-10, Rec. Doc. 48-16).

As Plaintiffs bring this motion for summary judgment and not Southern, it is not necessary for the Court to dwell on whether the evidence in the record conclusively proves or does not prove that Plaintiffs made false statements on the Policy application with intent to deceive. The Court does find, however, that there is sufficient evidence in the record to establish a genuine issue of material fact on that question.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' *Motion for Partial Summary Judgment* (Rec. Doc. 41) is **DENIED**.

New Orleans, Louisiana, this 31st day of July, 2020.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE