UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

STEVEN PAYTON, ET AL.                          CIVIL ACTION

VERSUS                                         18-2365

SOUTHERN FIDELITY                              SECTION: "J" (3)
INSURANCE COMPANY

**ORDER & REASONS**

Before the Court is a *Motion for Summary Judgment* **(Rec. Doc. 65)** filed by

Defendant Southern Fidelity Insurance Company ("Southern"). Plaintiffs[1] Dionne

and Steven Payton oppose the motion (Rec. Doc. 67), Southern filed a reply (Rec. Doc.

74), and the parties filed supplemental memoranda (Rec. Docs. 81, 84). Having

considered the motion and memoranda, the record, and the applicable law, the Court

finds that Southern's motion should be **GRANTED**.

**FACTS AND PROCEDURAL BACKGROUND**

This case arises out of an August 20, 2017 fire that destroyed Plaintiffs' home

located at 3501 Red Oak Court, New Orleans, Louisiana ("the Home"). The cause of

the fire was determined to be arson.[2] Plaintiffs filed the instant lawsuit to recover

insurance proceeds they believe are owed to them under the terms of their fire

insurance policy with Southern ("the Policy"). Southern has refused to pay Plaintiffs,

---

[1] As Plaintiffs are a married couple and aligned on every issue in this case, this Order will occasionally
refer to "Plaintiffs" in the plural, even though the actual actions described may have only been
undertaken by one member of the couple.
[2] (Rec. Doc. 65-14, at 7).

asserting, inter alia, that Plaintiffs concealed material information from Southern and made fraudulent misrepresentations when applying for the Policy.

Specifically, when applying for the Policy in June 2017, Plaintiffs were asked if they had "ever incurred a fire or a liability loss, or in the past 36 months, incurred more than two losses of any type?"[3] Plaintiffs answered in the negative. Additionally, Plaintiffs were asked if they "had a foreclosure, repossession, or bankruptcy during the last 5 years?"[4] Plaintiffs answered in the affirmative but stated only "discharged 1 year ago."[5] As it turns out, Plaintiffs incurred a fire loss in 2009 on a previous residential property, and the Home was subject to foreclosure proceedings in October 2012 and January 2013.[6]

If Plaintiffs' statements constitute intentional concealment or misrepresentation, as Southern claims, then the "concealment and fraud exclusion" ("the Exclusion") contained in the Policy would be triggered, thereby absolving Southern of any obligation to reimburse Plaintiffs for the loss of the Home.

On November 16, 2018, the Court stayed this case to allow the Louisiana Office of the State Fire Marshal to complete its investigation into the fire.[7] On March 2, 2020, the case was reopened after the Court was notified the Fire Marshall's office had closed its investigation for the time being.[8] Plaintiffs then moved for partial summary judgment, arguing that the Exclusion did not apply here.[9] The Court denied

---

[3] (Rec. Doc. 65-10, at 6).
[4] *Id.* at 5.
[5] *Id.*
[6] (Rec. Docs. 65-18, 65-21).
[7] (Rec. Doc. 29).
[8] (Rec. Doc. 33).
[9] (Rec. Doc. 41).

Plaintiffs' motion, finding that genuine disputes of material fact existed as to whether Plaintiffs made a false statement on the Policy application and whether the statements were made with the intent to deceive Southern.[10] Southern now seeks summary judgment, contending that the Exclusion bars Plaintiffs' claims. In the alternative, Southern asserts there is no evidence that its denial of Plaintiffs' insurance claim was arbitrary, capricious, or without probable cause, and therefore Plaintiffs' claims for damages, statutory penalties, and attorney's fees should be dismissed.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be

---

[10] (Rec. Doc. 61).

satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (internal quotation marks and citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

## DISCUSSION

Southern's invocation of the Exclusion is an affirmative defense, and therefore Southern must prove at trial that Plaintiffs intentionally concealed or misrepresented facts when they applied for the Policy. Because the Court previously denied Plaintiffs' motion for summary judgment on this issue, finding that Southern had submitted sufficient evidence to create genuine fact issues, the question before the Court is whether Plaintiffs have submitted sufficient evidence to counter Southern's evidence and resist summary judgment.

Although the Exclusion is technically part of the insurance contract between Plaintiffs and Southern, fraud and concealment exclusions in fire insurance contracts are heavily regulated by both Louisiana statute and caselaw. *See* La. R.S. 22:860, 1311(F); *Charleston v. State Farm Fire & Cas. Co.*, No. 88-0103, 1989 WL 30244, at

*1 (E.D. La. Mar. 30, 1989). It is well-settled law that in order for Southern to avail itself of the Exclusion and bar Plaintiffs' recovery, it must prove "(1) the insured made a false statement in his application for the insurance policy, (2) the false statement was made with the intent to deceive, and (3) the false statement materially affected the acceptance of the risk by the insurer or the hazard assumed." *Gwin v. Liberty Mut. Ins. Co.*, No. 16-1222, 2017 WL 3574443, at *5 (W.D. La. Aug. 17, 2017); *see also Jamshidi v. Shelter Mut. Ins. Co.,* 471 So.2d 1141, 1143 (La. App. 3d Cir. 1985). Plaintiffs do not contest the third element.[11] Therefore, the Court considers the first and second elements in turn.

## I. WHETHER PLAINTIFFS MADE A FALSE STATEMENT ON THE POLICY APPLICATION

As discussed in the recitation of facts, it is undisputed that Plaintiffs' application for the Policy contained false answers to two prequalification questions, thereby concealing from Southern Plaintiffs' 2009 fire loss and 2012 foreclosure proceedings. Nevertheless, Plaintiffs persist with their argument that the false answers in the Policy application cannot be imputed to them because the answers were the result of mistakes made by Tim Biedenkopf, the insurance salesman who sold Plaintiffs the policy. Under Louisiana law, if an agent of the insurer "by mistake, fraud or negligence inserts erroneous or untrue answers to the questions contained

---

[11] Southern has easily satisfied its burden for the third element. "A statement is material if it is of such a nature that, had it been true, the insurer either would not have contracted, or would have contracted only at a higher premium rate." *Willis v. Safeway Ins. Co. of La.*, 42,665 (La. App. 2d Cir. 10/24/07), 968 So.2d 346, 350. Shelley Roberts, a litigation specialist for Southern, declared that "Southern would not have issued the Policy if Steven Payton and Dionne Payton had provided accurate information in the Payton Southern Policy Application." (Rec. Doc. 65-8, at 1).

in the application, those representations are not binding on the insured." *State Farm Mut. Auto. Ins. Co. v. Bridges*, 45,162 (La. App. 2d Cir. 5/19/10), 36 So.3d 1142, 1147.

Plaintiffs fail to substantiate their claim that Biedenkopf was an agent of Southern with any evidence. Instead, they merely claim that the issue is "disputed," referring to the Court's prior order denying their motion for partial summary judgment, which found that Southern had raised a genuine issue of material fact as to whether Biedenkopf was its agent. (Rec. Doc. 67, at 10). Plaintiffs misconstrue their burden here. Because Southern has presented evidence that Biedenkopf was not their agent,[12] Plaintiffs must rebut that with evidence of their own (or show that it was so flimsy a reasonable juror would not be persuaded). *See Int'l Shortstop*, 939 F.2d at 1265. They have not done so, nor have they argued that mistake, fraud, or negligence caused Biedenkopf to insert incorrect answers.

Plaintiffs next argue that the application questions were ambiguous because the questions were "compound" and certain terms were not defined and therefore should be strictly construed against Southern. This argument is unavailing because Plaintiffs fail to identify which terms are susceptible of multiple meanings and what those alternative definitions are. *See, e.g., Guidry v. Am. Public Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007) ("A contract is ambiguous . . . when it is uncertain as to the parties' intentions and susceptible to more than one reasonable meaning under the

---

[12] "Here, the record shows Biedenkopf does not work for Southern. Rather, he operates an independent agency, Biedenkopf Insurance, which has a loose affiliation with a larger entity called The Woodlands Financial Group. (Rec. Doc. 48-18). Indeed, Biedenkopf stated that Southern only accounts for around ten percent of his overall business. *Id.* Moreover, Steven Payton refers to Biedenkopf as *his* insurance agent, having used him in 2014 to purchase an insurance policy from a different insurance company than Southern, and further states his belief that Biedenkopf was working for The Woodlands Financial Group at the time Plaintiffs purchased the Policy from him. (Rec. Doc. 48-3)." (Rec. Doc. 61, at 6-7).

circumstances and after applying established rules of construction." (internal quotation marks and citation omitted)). Plaintiffs have failed to establish that the application was ambiguous. Moreover, Biedenkopf did not ask the questions verbatim; the question he actually asked Plaintiffs, "have you had any claim history," (Rec. Doc. 65-30, at 46, 66), was broader than the question asked on the application (and presumably clearer, since it is not "compound"), and Plaintiffs offer no explanation for why they omitted their 2009 fire loss in response to this question.[13]

Further, Plaintiffs fail to address the fact that, after Biedenkopf entered Plaintiffs' responses on the application, he sent it to them to review and sign, and they signed the application and returned it to him without requesting any changes. (Rec. Doc. 65-30, at 70-73). "[A] party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him." *Aguillard v. Auction Mgmt. Corp.*, 04-2804 (La. 6/29/05), 908 So.2d 1, 17. Accordingly, Southern has demonstrated that Plaintiffs made false statements in their application for insurance.

---

[13] Plaintiffs assert that their misleading testimony regarding the 2009 fire loss (that it started at their neighbor's house and was resolved by their neighbor's insurance company) was due to their recollections being inaccurate, given that approximately 8 years had passed since those events. In addition to failing to substantiate this argument with evidence, as opposed to mere argument of counsel, they do not argue that their inaccurate recollections caused them to make false statements on the insurance application.

## II.    WHETHER THE FALSE STATEMENTS WERE MADE WITH THE INTENT TO DECEIVE

In disputes such as this, the insurer is not required to provide strict proof of fraud "because of the inherent difficulties in proving intent." *Benton v. Shelter Mut. Ins. Co.*, 550 So.2d 832, 835 (La. App. 2d Cir. 1989). Rather, intent to deceive may be determined from the "surrounding circumstances indicating the insured's knowledge of the falsity of the representation made in the application and his recognition of the materiality of the misrepresentations, or from circumstances which create a reasonable assumption that the insured recognized the materiality." *Cousin v. Page*, 372 So.2d 1231, 1233 (La. 1979).

Typically, factual questions involving a person's state of mind are inappropriate for summary judgment. *Int'l Shortstop*, 939 F.2d at 1265 ("When state of mind is an essential element of the nonmoving party's claim, it is less fashionable to grant summary judgment because a party's state of mind is inherently a question of fact which turns on credibility."). However, summary judgment may be appropriate "if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Id.* at 1266 (internal quotation marks and citation omitted).

Here, the circumstances suggest that Plaintiffs knew that their representations of no prior fire losses or foreclosures were false and material. As a result of their 2009 fire loss claim, Plaintiffs' previous insurer, State Farm, paid them over $220,000. (Rec. Doc. 65-21). In 2011, Plaintiffs obtained a mortgage for the Home from Sun Finance Company, LLC for $29,749.33. (Rec. Doc. 65-19). This mortgage

was foreclosed upon in October 2012 and January 2013. (Rec. Doc. 65-18). In August 2014, Plaintiffs took out a second mortgage on the Home from William Vincent for $150,000 to pay off the Sun Finance mortgage and other debts and to fund repairs. (Rec. Doc. 65-5, at 28, 46). Plaintiffs offer no explanation for why they would believe their representations of no prior fire losses and no foreclosures within the previous five years were true in light of these experiences.

Additionally, Plaintiffs' prior experience applying for homeowner's insurance suggests they recognized the materiality of their answers. In *Davis v. State Farm Mutual Automobile Insurance Co.*, the trial court found that the insurer had not shown that the insured knew the materiality of his driving record because it had not shown that the insured had a previous policy cancelled or a previous application denied. 415 So.2d 501, 504 (La. App. 1st Cir. 1982). The court of appeal reversed, holding that such strict proof was not required to show an insured's awareness of materiality. *Id.* Instead, the court reasoned that "[b]ecause of the fact that [the insured] had had automobile insurance previously, he either knew or should have known of the importance of a driving record when seeking automobile insurance." *Id.* at 503-04. Similarly, in *Watson v. United of Omaha Life Insurance Co.*, the court granted summary judgment to the insurer, reasoning that the insured recognized the materiality of her answers because she "was 49 years old when she applied for this life insurance" and "had at least some basic and practical experience with life insurance to so understand the significance of each of her responses." 735 F. Supp. 684, 686 (M.D. La. 1990).

Here, the record reflects that Plaintiffs previously applied for homeowner's insurance on at least three occasions. First, Plaintiffs at some point applied for the State Farm policy that covered their 2009 fire loss. (*See* Rec. Doc. 65-7). Second, in October 2014, Plaintiffs applied for insurance for the Home from Louisiana Citizens Property Insurance Corporation. (Rec. Doc. 65-29, at 2-8). Third, in the October 2014 application, Plaintiffs admitted that they had previously been declined coverage by at least one carrier on the voluntary market. *Id.* at 3. As Southern points out, this last fact satisfies the strict standard for materiality used by the trial court in *Davis* that was rejected by the court of appeal in favor of a broader standard. *See* 415 So.2d at 504. This circumstantial evidence overwhelmingly indicates that Plaintiffs "knew or should have known of the importance of" their past claims history when applying for homeowner's insurance. *Id.*

In opposition, Plaintiffs offer meager argument and no evidence: "Plaintiffs did not intend to deceive SFIC when they submitted the subject policy application. They attempted to answer compound, ambiguous, and off-the-cuff paraphrased questions honestly. Moreover, it cannot be established that Plaintiffs recognized the significance, or materiality, of any inaccuracies in their responses to the questions asked of them without a factual inquiry and a credibility determination." (Rec. Doc. 67, at 10-11). Argument of counsel is not evidence. *See Little*, 37 F.3d at 1075 (unsubstantiated assertions are insufficient to defeat summary judgment). Additionally, they again fail to address the fact that they personally signed the application after Biedenkopf sent it to them and therefore cannot claim that they did

10

not understand the questions. *See Aguillard*, 908 So.2d at 17; *see also Watson*, 735 F. Supp. at 685-86 (finding that insured's signature on application next to certification "strongly indicates that she realized the importance of her answers").

Finally, to the extent Plaintiffs contend that Biedenkopf's comment that Southern had "loosened up their underwriting" made them believe that their claims history was not (or no longer) material to Southern, they have presented no evidence of such. Nor have Plaintiffs explained how it would be reasonable to infer that, upon hearing this, they would no longer believe their claims history was material yet would still decide to conceal their 2009 fire loss. Rather, the only reasonable inference here is that Plaintiffs, having previously applied for homeowner's insurance on several occasions and been denied at least once, decided to conceal their 2009 fire loss on their application to improve their chances of obtaining insurance. Therefore, Southern is entitled to summary judgment.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Southern's *Motion for Summary Judgment* **(Rec. Doc. 65)** is **GRANTED**, and Plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 20th day of July, 2021.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE